**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| FARID ZOLDJALALI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>GUGGENHEIM STRATEGIC OPPORTUNITIES FUND, GUGGENHEIM FUNDS INVESTMENT ADVISORS, LLC, GUGGENHEIM INVESTMENTS, BRIAN E. BINDER, JAMES HOWLEY, AMY J. LEE, RANDALL C. BARNES, ANGELA-BROCK KYLE, THOMAS LYDON, JR., RONALD A. NYBERG, SANDRA G. SPONEM, and RONALD E. TOUPIN, JR.,<br><br>Defendants. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Farid Zoldjalali ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Guggenheim Strategic Opportunities Fund (the "Fund"), analysts' reports and advisories about the Fund, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired: (a) the Fund's common stock pursuant and/or traceable to the Offering Documents (defined below) issued in connection with the Fund's at-the-market offering beginning on November 24, 2025 (the "Offering"); and/or (b) the Fund's securities between November 4, 2025 and August 20, 2026, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"), Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder, against the Fund and certain of its top officials.

2. The Fund is a closed-end mutual fund managed by Defendant Guggenheim Funds Investment Advisors, LLC ("Guggenheim Advisors") that invests in public equity and fixed-income markets. Guggenheim Advisors' parent company, Defendant Guggenheim Investments, is the investment management business of Guggenheim Partners, LLC ("Guggenheim Partners").

3. The Fund has paid its common shareholders monthly distributions since its inception on July 26, 2007. For over 13 years, since May 15, 2013, the Fund has maintained a monthly distribution of $0.18 per share, which represented a return of over 20% per year on net asset value ("NAV").

4. On November 21, 2025, the Fund filed an amended shelf registration statement on Form N-2 (the "Registration Statement") with the SEC in connection with the Offering, registering $1 billion worth of its common shares.

5. Also on November 21, 2025, the Fund filed a prospectus on form 424B5 with the SEC in connection with the Offering, which incorporated and formed part of the Registration

Statement (the "Prospectus" and, collectively with the Registration Statement, the "Offering Documents").

6. On November 24, 2025, the Fund commenced the Offering pursuant to the Offering Documents.

7. In recent years, Guggenheim Partners, its CEO Mark Walter ("Walter"), and Guggenheim Investments have faced scrutiny from federal prosecutors and regulators. On June 17, 2026, Delaware Life Insurance Company ("Delaware Life"), an entity that Walter owns, disclosed that it and another entity that Walter owns, Clear Spring Life and Annuity Company ("Clear Spring"), had received grand jury subpoenas in February 2026, in connection with investigations conducted by the U.S. Attorney's Office for the Southern District of New York and the SEC, focused on whether Delaware Life and Clear Spring investments valued at $21 billion should have been reported as affiliated or related-party transactions. In August 2026, *Crain's Chicago Business* reported that, in 2025, the Federal Bureau of Investigation had seized Walter's phone and laptop, in connection with the same investigation. Throughout these events, the Fund continued to pay out its consistent monthly distributions.

8. The Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation. Additionally, throughout the Class Period, Defendants made materially false and misleading statements regarding the Fund's business, operations, and prospects. Specifically, the Offering Documents and Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Fund's monthly distributions were funded in large part by selling new shares at a premium to NAV rather than by portfolio earnings alone; (ii) the foregoing created a non-

speculative risk that the Fund's plan of distributions was unsustainable; and (iii) as a result, Defendants' public statements were materially false and misleading at all relevant times.

9. The truth began to emerge on August 20, 2026, when the financial investigative newsletter The Bear Cave published a report (the "Bear Cave Report") alleging that the Fund funded its monthly distributions predominantly by selling new shares at a premium to NAV rather than through portfolio earnings, and that the Fund's share price had now fallen below the levels necessary to continue funding monthly distributions in this way pursuant to the Investment Company Act of 1940. The Bear Cave Report attributed the decline in the Fund's share price, in part, to news that the U.S. Attorney's Office of the Southern District of New York and the SEC were now focused on four entities that served as intermediaries between Delaware Life and Clear Spring on one hand, and other businesses that Walter controlled, on the other hand.

10. On this news, the Fund's common stock price fell $0.67 per share, or 6.64%, to close at $9.42 per share on August 20, 2026.

11. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Fund's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

12. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

13. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

14. Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). The Fund is headquartered in this District, Defendants conduct business in this District, and a significant portion of Defendants' actions took place within this District.

15. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

16. Plaintiff, as set forth in the attached Certification, acquired the Fund's common stock pursuant and/or traceable to the Offering Documents issued in connection with the Offering, and/or purchased or otherwise acquired the Fund's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

17. Defendant Guggenheim Strategic Opportunities Fund is closed-end mutual fund registered with the SEC pursuant to the 1940 Act, organized under the laws of Delaware with principal executive offices located at 227 West Monroe Street, Chicago, Illinois, 60606. The Fund's Class A common stock trades in an efficient market on the New York Stock Exchange ("NYSE") under the ticker symbol "GOF".

18. Defendant Guggenheim Advisors was the Adviser for the Fund at all relevant times. During the Class Period, the Adviser's principal executive offices were located at 227 West Monroe Street, Chicago, Illinois, 60606.

19. Defendant Guggenheim Investments is the Adviser's parent company and the investment management business of Guggenheim Partners. During the Class Period, Guggenheim Investment's maintained an office at 227 West Monroe Street, Chicago, Illinois, 60606.

20. Defendant Guggenheim Partners Investment Management, LLC was the investment sub-adviser (the "Sub-Adviser") for the Fund at all relevant times. During the Class Period, the Sub-Adviser's principle executive offices were located at 100 Wilshire Boulevard, Suite 500, Santa Monica, CA 90401.

21. Defendant Brian E. Binder ("Binder") served as the Fund's CEO at all relevant times. Defendant Binder signed or authorized the signing of the Registration Statement filed with the SEC.

22. Defendant James Howley ("Howley") served as the Fund's Chief Financial Officer at all relevant times. Defendant Howley signed or authorized the signing of the Registration Statement filed with the SEC.

23. Defendants Binder and Howley are collectively referred to herein as the "Exchange Act Individual Defendants".

24. The Exchange Act Individual Defendants possessed the power and authority to control the contents of the Fund's SEC filings, press releases, and other market communications. The Exchange Act Individual Defendants were provided with copies of the Fund's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Fund, and their access to material information available to them but not to the public, the Exchange Act Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive

representations being made were then materially false and misleading. The Exchange Act Individual Defendants are liable for the false statements and omissions pleaded herein.

25. The Fund, the Adviser, Guggenheim Investments, the Sub-Adviser, and the Exchange Act Individual Defendants are collectively referred to herein as the "Exchange Act Defendants".

26. Defendant Amy J. Lee ("Lee") served as the Fund's Vice President and Chief Legal Officer at all relevant times. Defendant Lee signed or authorized the signing of the Registration Statement filed with the SEC.

27. Defendant Randall C. Barnes ("Barnes") served as one of the Fund's Trustees at all relevant times. Defendant Barnes signed or authorized the signing of the Registration Statement filed with the SEC.

28. Defendant Angela-Brock Kyle ("Kyle") served as one of the Fund's Trustees at all relevant times. Defendant Kyle signed or authorized the signing of the Registration Statement filed with the SEC.

29. Defendant Thomas Lydon, Jr. ("Lydon") served as one of the Fund's Trustees at all relevant times. Defendant Lydon signed or authorized the signing of the Registration Statement filed with the SEC.

30. Defendant Ronald A. Nyberg ("Nyberg") served as one of the Fund's Trustees at all relevant times. Defendant Nyberg signed or authorized the signing of the Registration Statement filed with the SEC.

31. Defendant Sandra G. Sponem ("Sponem") served as one of the Fund's Trustees at all relevant times. Defendant Sponem signed or authorized the signing of the Registration Statement filed with the SEC.

32. Defendant Ronald E. Toupin, Jr. ("Toupin") served as one of the Fund's Trustees at all relevant times. Defendant Toupin signed or authorized the signing of the Registration Statement filed with the SEC.

33. The Exchange Act Individual Defendants and Defendants Glanville, Janover, Tepper, and Angell are collectively referred to herein as the "Securities Act Individual Defendants".

34. As trustees, directors, executive officers and/or major shareholders of the Fund, the Securities Act Individual Defendants participated in the solicitation and sale of the Fund's securities in the Offering for their own benefit and the benefit of the Fund. The Securities Act Individual Defendants were key members of the Offering working group.

35. The Fund and Securities Act Individual Defendants are collectively referred to herein as the "Securities Act Defendants".

36. The Fund, the Adviser, the Sub-Adviser, the Exchange Act Individual Defendants and the Securities Act Individual Defendants are collectively referred to herein as "Defendants".

## SUBSTANTIVE ALLEGATIONS

### Background

37. The Fund is a closed-end mutual fund managed by Guggenheim Advisors and invests in public equity and fixed-income markets both domestic and abroad. Guggenheim Advisors' parent company, Defendant Guggenheim Investments, is the investment management business of Guggenheim Partners.

38. The Fund has paid its common shareholders monthly distributions since its inception on July 26, 2007. For over 13 years, since May 15, 2013, the Fund has maintained a monthly distribution of $0.18 per share, which represented a return of over 20% per year on NAV.

39. On November 21, 2025, the Fund filed the Registration Statement with the SEC in connection with the Offering, registering $1 billion worth of its common shares.

40. Also on November 21, 2025, the Fund filed the Prospectus in connection with the Offering, which incorporated and formed part of the Registration Statement.

41. On November 24, 2025, the Fund commenced the Offering pursuant to the Offering Documents.

42. In recent years, Guggenheim Partners, its CEO Mark Walter ("Walter"), and Guggenheim Investments have faced scrutiny from federal prosecutors and regulators. On June 17, 2026, Delaware Life, an entity that Walter owns, disclosed that it and another entity that Walter owns, Clear Spring, an affiliated entity also owned by Walter, had received grand jury subpoenas in February 2026, in connection with investigations conducted by the U.S. Attorney's Office for the Southern District of New York and the SEC, focused on whether certain Delaware Life and Clear Spring investments should have been reported as affiliated or related-party transactions. In August 2026, *Crain's Chicago Business* reported that, in 2025, the Federal Bureau of Investigation had seized Walter's phone and laptop, in connection with the same investigation. Throughout these events, the Fund continued to pay out its consistent monthly distributions.

## Materially False and Misleading Statements Issued in the Offering Documents

43. The Offering Documents represented that the Fund "intend[ed] to invest net proceeds" from the Offering "in accordance with its investment objective and policies", stating in relevant part:

> ***Unless otherwise specified in a prospectus supplement, the Fund intends to invest the net proceeds of the offering of Common Shares in accordance with its investment objective and policies as stated above or otherwise invest the net proceeds as follows***. It is currently anticipated that the Fund will be able to invest most of the net proceeds of an offering of Common Shares in accordance with its investment objective and policies within three months after the receipt of such

> proceeds. Pending such investment, ***it is anticipated that the proceeds will be invested in U.S. government securities or high quality, short-term money-market securities.***

44. Moreover, the Offering Documents couched the possibility of using proceeds from the Offering to pay distributions in conditional language, stating only that the Fund "may" use proceeds from the Offering in this manner, and underrepresented the extent to which past distributions were comprised of proceeds from share issuances, stating only that "a portion" of its cash "is usually used to pay distributions", belying the fact that a *majority* of its distributions for several years had been comprised of proceeds from share issuances, stating in relevant part:

> ***The Fund may also use the proceeds for working capital purposes, including the payment of distributions***, interest and operating expenses. ***A portion of the cash held by the Fund, including net proceeds of the offering, is usually used to pay distributions in accordance with the Fund's distribution policy*** and may be a return of capital, which is in effect a partial return of the amount a Common Shareholder invested in the Fund. Common Shareholders who receive the payment of a distribution consisting of a return of capital may be under the impression that they are receiving net investment income or profit when they are not. ***The Fund's distributions may be greater than the Fund's net investment income or profit***. The offering of Common Shares supports the Fund's asset level and if the Fund does not offer or sell Common Shares, the Fund may not be able to maintain historical distribution levels for extended periods of time.

45. The Offering Documents continued to mislead investors about the extent to which distributions had historically been funded through share issuances, as it listed "return of capital" last among three categories that generally comprised its distributions, stating in relevant part:

> The Fund intends to pay substantially all of its net investment income, if any, to Common Shareholders through monthly distributions. In addition, the Fund intends to distribute any net long-term capital gains to Common Shareholders at least annually. The Fund expects that distributions paid on Common Shares will generally consist of (i) investment company taxable income taxed as ordinary income, which includes, among other things, dividend and interest income accrued on portfolio assets, short-term capital gain and income from certain hedging and interest rate transactions, (ii) long-term capital gain and (iii) return of capital.

46. The Offering Documents continued to describe the possibility the Fund's distributions would at least partially consist of net proceeds from the Offering as a mere possibility, stating in relevant part:

> To permit the Fund to maintain more stable monthly distributions, the Fund may distribute more or less than the entire amount of the net investment income earned in a particular period. ***As a result***, the distributions paid by the Fund for any particular monthly period may be more or less than the amount of net investment income actually earned by the Fund during the period, and, ***to pay distributions, the Fund may have to use net proceeds of an offering*** or sell a portion of its investment portfolio to make a distribution at a time when independent investment judgment might not dictate such action.

47. The statements referenced in ¶¶ 43–46 were materially false and/or misleading because the Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation. Specifically, the Offering Documents made false and/or misleading statements and/or failed to disclose that: (i) the Fund's monthly distributions were funded in large part by selling new shares at a premium to NAV rather than by portfolio earnings alone; (ii) the foregoing created a non-speculative risk that the Fund's plan of distributions was unsustainable; and (iii) as a result, Defendants' public statements were materially false and misleading at all relevant times.

**<u>Materially False and Misleading Statements Issued During the Class Period</u>**

48. The Class Period begins on November 4, 2025, the day after Defendant Guggenheim Investments issued a press release, aftermarket hours, announcing that certain closed-end funds, including the Fund, had declared their distributions. This press release stated, in relevant part:

> GOF; Guggenheim Strategic Opportunities Fund; $0.1821† . . . † A portion of this distribution is estimated to be a return of capital rather than income. Final determination of the character of distributions will be made at year-end. The

> Section 19(a) notice referenced below provides more information and can be found at www.guggenheiminvestments.com. You should not draw any conclusions about the Fund's investment performance from the amount of this distribution or from the terms of the Fund's Distribution Policy. . . . As of this announcement, the sources of each fund distribution are estimates. Distributions may be paid from sources of income other than ordinary income, such as short-term capital gains, long-term capital gains or return of capital. Unless otherwise noted, the distributions above are not anticipated to include a return of capital. If a distribution consists of something other than ordinary income, a Section 19(a) notice detailing the anticipated source(s) of the distribution will be made available.

49. On November 24, 2025, the Fund commenced the Offering pursuant to the pursuant to the materially false or misleading statements or omissions in the Offering Documents, as referenced in ¶¶ 43–46, *supra*.

50. On December 1, 2025, Defendant Guggenheim Investments issued a press release announcing that certain closed-end funds, including the Fund, had declared their distributions. This press release stated only that "a portion" of the distribution was "estimated" to consist of a return of capital—*i.e.*, consisted of proceeds from selling Fund shares—stating in relevant part:

> GOF; Guggenheim Strategic Opportunities Fund; $0.1821† . . . † ***A portion of this distribution is estimated to be a return of capital rather than income***. Final determination of the character of distributions will be made at year-end. The Section 19(a) notice referenced below provides more information and can be found at www.guggenheiminvestments.com. You should not draw any conclusions about the Fund's investment performance from the amount of this distribution or from the terms of the Fund's Distribution Policy. . . . ***As of this announcement, the sources of each fund distribution are estimates***. Distributions may be paid from sources of income other than ordinary income, such as short-term capital gains, long-term capital gains or return of capital. Unless otherwise noted, the distributions above are not anticipated to include a return of capital. If a distribution consists of something other than ordinary income, a Section 19(a) notice detailing the anticipated source(s) of the distribution will be made available.

51. On January 2, 2026, Defendant Guggenheim Investments issued a press release announcing that certain closed-end funds, including the Fund, had declared their distributions. Like the analogous press release Defendant Guggenheim Investments issued on December 1, 2025,

this press release stated only that "a portion" of the distribution was "estimated" to consist of a return of capital—*i.e.*, consisted of proceeds from selling Fund shares—stating, in relevant part:

> GOF; Guggenheim Strategic Opportunities Fund; $0.1821† . . . † ***A portion of this distribution is estimated to be a return of capital rather than income***. Final determination of the character of distributions will be made at year-end. The Section 19(a) notice referenced below provides more information and can be found at www.guggenheiminvestments.com. You should not draw any conclusions about the Fund's investment performance from the amount of this distribution or from the terms of the Fund's Distribution Policy. . . . ***As of this announcement, the sources of each fund distribution are estimates***. Distributions may be paid from sources of income other than ordinary income, such as short-term capital gains, long-term capital gains or return of capital. Unless otherwise noted, the distributions above are not anticipated to include a return of capital. If a distribution consists of something other than ordinary income, a Section 19(a) notice detailing the anticipated source(s) of the distribution will be made available.

52. On January 27, 2026, Defendant Guggenheim Advisors published the Fund's Semi-Annual Report for the six-month period ended November 30, 2025 (the "Semi-Annual Report"). This Semi-Annual Report "encourage[d]" the Fund's shareholders to reinvest their monthly distributions in the Fund's common shares, in an apparent attempt to help maintain the Fund's share price above its NAV, and enable the Fund to continue maintaining its monthly distributions by issuing new shares, stating in relevant part:

> We encourage shareholders to consider the opportunity to reinvest their distributions from the Fund through the Dividend Reinvestment Plan ("DRIP"), which is described on page 154 of this report. When shares trade at a discount to NAV, the DRIP takes advantage of the discount by reinvesting the monthly dividend distribution in common shares of the Fund purchased in the market at a price less than NAV. Conversely, when the market price of the Fund's common shares is at a premium above NAV, the DRIP reinvests participants' dividends in newly issued common shares at the greater of NAV per share or 95% of the market price per share. The DRIP provides a cost-effective means to accumulate additional shares and enjoy the benefits of compounding returns over time. The DRIP effectively provides an income averaging technique for shareholders to accumulate a larger number of Fund shares when the market price is depressed than when the price is higher.

53. Like the Offering Documents, the Semi-Annual Report mislead investors about the extent to which distributions had historically been funded through share issuances, listing "return of capital" last among categories that generally comprised its distributions, stating in relevant part:

> During the Reporting Period, the Fund paid a monthly distribution of $0.1821 per share. The most recent distribution represents an annualized distribution rate of 17.58% based on the Fund's closing market price of $12.43 per share at the end of the Reporting Period. The distributions paid consisted of (i) investment company taxable income taxed as ordinary income, which includes, among other things, short-term capital gain and income from certain hedging and interest rate transactions and (ii) return of capital.

54. On February 2, 2026, Defendant Guggenheim Investments issued a press release announcing that certain closed-end funds, including the Fund, had declared their distributions. This press release stated only that "a portion" of the distribution was "estimated" to consist of a return of capital—*i.e.*, consisted of proceeds from selling Fund shares—stating in relevant part:

> GOF; Guggenheim Strategic Opportunities Fund; $0.1821† . . . † ***A portion of this distribution is estimated to be a return of capital rather than income***. Final determination of the character of distributions will be made at year-end. The Section 19(a) notice referenced below provides more information and can be found at www.guggenheiminvestments.com. You should not draw any conclusions about the Fund's investment performance from the amount of this distribution or from the terms of the Fund's Distribution Policy. . . . ***As of this announcement, the sources of each fund distribution are estimates***. Distributions may be paid from sources of income other than ordinary income, such as short-term capital gains, long-term capital gains or return of capital. Unless otherwise noted, the distributions above are not anticipated to include a return of capital. If a distribution consists of something other than ordinary income, a Section 19(a) notice detailing the anticipated source(s) of the distribution will be made available.

55. Defendant Guggenheim Investments issued analogous press releases on March 2, 2026; April 1, 2026; May 1, 2026; June 1, 2026; July 1, 2026; and August 3. 2026, each of which stated, in relevant part:

> GOF; Guggenheim Strategic Opportunities Fund; $0.1821† . . . † ***A portion of this distribution is estimated to be a return of capital rather than income***. Final determination of the character of distributions will be made at year-end. The Section 19(a) notice referenced below provides more information and can be found

> at www.guggenheiminvestments.com. You should not draw any conclusions about the Fund's investment performance from the amount of this distribution or from the terms of the Fund's Distribution Policy. . . . ***As of this announcement, the sources of each fund distribution are estimates***. Distributions may be paid from sources of income other than ordinary income, such as short-term capital gains, long-term capital gains or return of capital. Unless otherwise noted, the distributions above are not anticipated to include a return of capital. If a distribution consists of something other than ordinary income, a Section 19(a) notice detailing the anticipated source(s) of the distribution will be made available.

56. The statements referenced in ¶¶ 48, 50–55 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Fund's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Fund's monthly distributions were funded in large part by selling new shares at a premium to NAV rather than by portfolio earnings alone; (ii) the foregoing created a non-speculative risk that the Fund's plan of distributions was unsustainable; and (iii) as a result, Defendants' public statements were materially false and misleading at all relevant times.

**The Truth Begins to Emerge**

57. The truth began to emerge on August 20, 2026, when the Bear Cave published a report (the "Bear Cave Report") alleging that the Fund funded its monthly distributions in large part by selling new shares at a premium to NAV rather than by portfolio earnings alone, and that the Fund's NAV had now fallen below the levels necessary to continue funding monthly distributions in this way, in part due to news that the U.S. Attorney's Office of the Southern District of New York and the SEC were now focused on four entities that served as intermediaries between Delaware Life and Clear Spring on one hand, and other businesses that Walter controlled, on the other hand.

58. The Bear Cave Report laid bare the connection between federal investigations into Walter and the Fund's ability to maintain its monthly distributions. Quoting a former Guggenheim Partners employee, the Bear Cave Report stated that the Fund's assets could not have sustained these monthly distributions alone, stating in relevant part:

> According to a former Guggenheim executive, "[the Fund] was kind of a dumping ground." He said it was full of "the yieldiest pieces of crap" that were "very illiquid" with "chunky exposure," adding that it is "hard to adjust when faced with flows." He added: "Any client that needed to exit it always had difficulties with that."

59. The Bear Cave Report explained that the Fund's portfolio, which consisted of positions varying from Fannie Mae mortgage bonds and an S&P 500 index ETF to "twin $20 million notes issued by Canadian shell companies" and "$23 million notes . . . bought at issuance from a U.K. shell company that had existed for 12 weeks", used share issuances in order to "pay[] out like a top-decile hedge fund" despite being closer to "a fund stuffed with bonds", stating in relevant part:

> Over the past eight fiscal years, [the Fund] distributed $1.74 billion to shareholders. Its portfolio, counting every dollar of income and every realized and unrealized gain, generated only about a third of that in earnings. So how did it fund the distribution? ***On a month-end basis, [the Fund] stayed above NAV 125 times in a row from March 2016 through July 2026. That premium gave it a Magic Money Machine: [the Fund] could issue new common shares above NAV, month after month, and use the proceeds from those share sales to fund its dividend.***

60. However, as the Bear Cave Report explained, once the Fund's share price fell below NAV, it could no longer maintain its distributions by issuing new shares—and after the *Wall Street Journal* published its article concerning federal investigations into Walter, the Fund's share price quickly fell to that level.

61. On this news, the Fund's common stock price fell $0.67 per share, or 6.64%, to close at $9.42 per share on August 20, 2026.

62. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Fund's securities, Plaintiff and other Class members have suffered significant losses and damages.

## SCIENTER ALLEGATIONS

63. During the Class Period, Defendants had both the motive and opportunity to commit fraud. They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time. In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Fund's securities during the Class Period.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

64. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired: (a) the Fund's common stock pursuant and/or traceable to the Offering Documents issued in connection with the Offering; and/or (b) the Fund's securities during the Class Period; and were damaged thereby (the "Class"). Excluded from the Class are Defendants herein, the officers and directors of the Fund, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

65. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Fund's securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or

thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Fund or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

66. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

67. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

68. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public in the Offering Documents for the Offering, or during the Class Period, misrepresented material facts about the business, operations and management of the Fund;
- whether the Securities Act Individual Defendants negligently prepared the Offering Documents for the Offering and, as a result, the Offering Documents contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading, and were not prepared in accordance with the rules and regulations governing their preparation
- whether the Exchange Act Individual Defendants caused the Fund to issue false and misleading financial statements during the Class Period;
- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of the Fund's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

69. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

70. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- the Fund's securities are traded in an efficient market;

- the Fund's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Fund traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Fund's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold the Fund's securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

71. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

72. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v.*

*United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 11 of the Securities Act Against the Securities Act Defendants)**

73. Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

74. This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against the Securities Act Defendants.

75. The Offering Documents for the Offering were inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

76. The Fund is the registrant for the Offering. The Securities Act Defendants were responsible for the contents and dissemination of the Offering Documents.

77. As issuer of the shares, the Fund is strictly liable to Plaintiff and the Class for the misstatements and omissions in the Offering Documents.

78. None of the Securities Act Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Offering Documents were true and without omissions of any material facts and were not misleading.

79. By reasons of the conduct herein alleged, each Securities Act Defendant violated, and/or controlled a person who violated, Section 11 of the Securities Act.

80. Plaintiff acquired the Fund's shares pursuant and/or traceable to the Offering Documents for the Offering.

81. Plaintiff and the Class have sustained damages. The value of the Fund's securities has declined substantially subsequent to and because of the Securities Act Defendants' violations.

## COUNT II

**(Violations of Section 15 of the Securities Act Against the Securities Act Individual Defendants)**

82. Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

83. This Count is asserted against the Securities Act Individual Defendants and is based upon Section 15 of the Securities Act, 15 U.S.C. § 77o.

84. The Securities Act Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of the Fund within the meaning of Section 15 of the Securities Act. The Securities Act Individual Defendants had the power and influence and exercised the same to cause the Fund to engage in the acts described herein.

85. The Securities Act Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

86. By virtue of the conduct alleged herein, the Securities Act Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## COUNT III

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

87. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

88. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

89. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of the Fund's securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire the Fund's securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

90. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for the Fund's securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Fund's finances and business prospects.

91. By virtue of their positions at the Fund, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose

such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

92. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of the Fund, the Individual Defendants had knowledge of the details of the Fund's internal affairs.

93. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of the Fund. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to the Fund's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of the Fund's securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning the Fund's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired the Fund's securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

94. During the Class Period, the Fund's securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of the Fund's securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of the Fund's securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of the Fund's securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

95. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

96. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Fund's securities during the Class Period, upon the disclosure that the Fund had been disseminating misrepresented financial statements to the investing public.

## COUNT IV

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

97. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

98. During the Class Period, the Individual Defendants participated in the operation and management of the Fund, and conducted and participated, directly and indirectly, in the conduct of the Fund's business affairs. Because of their senior positions, they knew the adverse non-public information about the Fund's misstatement of income and expenses and false financial statements.

99. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Fund's financial condition and results of operations, and to correct promptly any public statements issued by the Fund which had become materially false or misleading.

100. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Fund disseminated in the marketplace during the Class Period concerning the Fund's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Fund to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of the Fund within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Fund's securities.

101. Each of the Individual Defendants, therefore, acted as a controlling person of the Fund. By reason of their senior management positions and/or being directors of the Fund, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Fund to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Fund and possessed the power to

control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

102. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Fund.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: November 25, 2026

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

Joshua B. Silverman
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603

Telephone: (312) 377-1181
Facsimile: (312) 229-8811
jbsilverman@pomlaw.com

SCHALL, BROWN & SCHWARTZ LLP
David J. Schwartz*
274 White Plains Road, Suite 1
Eastchester, New York 10709
Telephone: (914) 206-9742
david@schallfirm.com

*Attorneys for Plaintiff*

**Pro hac vice* application forthcoming